## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE DELPECHE,<br><br>               Plaintiff,<br><br>    -against-<br><br>TASTES ON THE FLY NEW YORK, LLC d/b/a THE PARIS CAFÉ and d/b/a TASTES ON THE FLY, and jointly and individually ERIK "ROCKY" SAUNDERS, RORY O'FARRELL, GRACE CHA and AMY TREVINO,<br><br>               Defendants. | Civil Action No. 21-cv-893<br>      (ECF Case)<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and though Plaintiff's attorney, the Law Offices of Laurie E. Morrison, hereby alleges:

### NATURE OF THE ACTION

1.      This is an employment case about employers Tastes On The Fly New York, LLC d/b/a The Paris Café and d/b/a Tastes On The Fly, Defendant Supervisors Rory O'Farrell, Amy Trevino, Grace Cha, and staff members, including, but not limited to, Defendant Erik "Rocky" Saunders discriminating against, harassing and retaliating against employee, Katherine Delpeche, on a regular basis because of the employee's sex, gender and legally protected complaints. Defendants' unlawful abuse included, but was not limited to, sexually harassing Plaintiff numerous times during her employment, escalating the harassment after Plaintiff's legally protected complaints, and suspending and terminating Plaintiff's employment weeks after her legally protected complaints.

2.      Plaintiff's claims include, but are not limited to, harassment, hostile work environment, discrimination and retaliation based on race, color, sex, gender and legally protected complaints in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., as amended ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.,* as amended in 2019 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq*. (NYCHRL").

3.      This action is against Plaintiff's former employer Tastes On The Fly New York, LLC d/b/a Tastes On The Fly and d/b/a The Paris Café (collectively, "Defendant Company"); former supervisors Rory O'Farrell (hereinafter, "Defendant O'Farrell"); Amy Trevino (hereinafter, "Defendant Trevino"), Grace Cha (hereinafter, "Defendant Cha"), and former co-worker Erik "Rocky" Saunders (hereinafter, "Defendant Saunders) (collectively, "Defendants").

## **PARTIES**

4.      Plaintiff, Katherine Delpeche, is a natural person who, at all times relevant to this action, resided in Kings County, New York.

5.      Defendant Saunders is a natural person who, upon information and belief at all times relevant to this action, resided in New York County, New York.

6.      Defendant O'Farrell is a natural person who, upon information and belief at all times relevant to this action, resided in New Jersey.

7.      Defendant Trevino is a natural person who, upon information and belief at all times relevant to this action, resided in Kings County, New York.

8.      Defendant Cha is a natural person who, upon information and belief at all times relevant to this action, resided in New York County, New York.

9.      Defendant Company is a domestic limited liability company.

10.      At all times relevant to this action, Tastes On The Fly was a d/b/a of Tastes On The Fly New York LLC.

11.      At all times relevant to this action, The Paris Café was a d/b/a of Tastes On The Fly New York LLC.

12.      At all times relevant to this action, Defendant Company maintained an office located in The TWA Hotel, One Idlewild Drive, JFK International Airport, Terminal 5, in New York, New York, 11430 (hereinafter, "Defendant Company's Office").

13.      At all times relevant to this action, Plaintiff worked in Defendant Company's Office.

14.      At all times relevant to this action, Defendant Company employed more than 50 individuals.

15.      Plaintiff seeks to hold Defendants liable under various legal doctrines, including without limitation, vicarious liability, strict liability, respondeat superior, aiding and abetting liability and/or other grounds.

## JURISDICTION AND VENUE

16.      This Court has jurisdiction over the federal claims asserted herein in that they arise out of the laws of the United States.  *See* 28 U.S.C. § 1331 [Federal Questions] and 29 U.S.C. § 2617 [Enforcement].  This Court has supplemental jurisdiction over the New York State and common law claims pursuant to 28 U.S.C. § 1367.

17.      Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

18.     On or around February 7, 2020, Plaintiff filed charges of discrimination, harassment and retaliation against Defendant Company based on sex, gender and legally protected complaints (the "Charges") in the Equal Employment Opportunity Commission ("EEOC"), which was dually filed in the New York State Human Rights Division.

19.     Upon request, Plaintiff received a Notice of Right To Sue from the EEOC, dated November 3, 2020.

20.     This action is being brought within 90 days of Plaintiff's receipt of the said Notice of Right to Sue.

21.     Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

22.     Plaintiff seeks an award of appropriate relief.


**RELEVANT FACTS**

23.     Plaintiff, Katherine Delpeche, is a woman.

24.     Defendant Company is a restaurant.

25.     Defendant Company hired Ms. Delpeche on or around July, 2019.

26.     Defendant Company hired Ms. Delpeche to work as a line cook.

27.     Ms. Delpeche's annual salary was approximately $18/hour.

28.     Ms. Delpeche worked approximately 36+ hours each work week.

29.     Ms. Delpeche maintained a positive work record.

30.     Beginning on or around September/October, 2019 and continuing throughout Ms. Delpeche's employment, Defendant Saunders sexually harassed Ms. Delpeche.

31.     For example, Defendant Saunders **asked Ms. Delpeche if she had a boyfriend.**

4

32.     Defendant Saunders **asked Ms. Delpeche if she loved her boyfriend**.

33.     Defendant Saunders told Ms. Delpeche **"Fuck your boyfriend. I should be you man."**

34.     Defendant Saunders told Ms. Delpeche that he **"wanted to give [Ms. Delpeche] head", meaning cunnilingus**.

35.     Ms. Delpeche told Defendant Saunders that his conduct was unwelcome and inappropriate.

36.     Ms. Delpeche also warned Defendant Saunders that the employer had video cameras, so his unlawful harassment was being recorded.

37.     **Defendant Saunders responded "Fuck this job."**

38.     Defendant Saunders **also followed Ms. Delpeche around the workplace.**

39.     Defendant Saunders **followed Ms. Delpeche to the front of the restroom**.

40.     Ms. Delpeche told Defendant Saunders to stop following her.

41.     Defendant Saunders' harassment continued, unabated.

42.     Defendant Saunders did not sexually harass Defendant Company's male staff members.

43.     Defendant Trevino was an Executive Chef in Defendant Company.

44.     Defendant Trevino was also one of Ms. Delpeche's supervisors.

45.     Defendant Trevino had the authority to give Ms. Delpeche work assignments.

46.     Defendant Trevino gave Ms. Delpeche work assignments.

47.     Defendant Trevino had the authority to discipline Ms. Delpeche.

48.     Defendant Trevino had the authority to be involved in scheduling Ms. Delpeche's work shifts.

49.     Defendant Trevino had some involvement in scheduling at least some of Ms. Delpeche's work shifts.

50.     On or about November 27, 2019, Ms. Delpeche complained to Defendant Trevino that Defendant Saunders was sexually harassing her.

51.     Ms. Delpeche told Defendant Trevino that she did not feel safe around Defendant Saunders.

52.     Ms. Delpeche told Defendant Trevino that Defendant Saunders was following her in the workplace.

53.     Ms. Delpeche asked Defendant Trevino to switch Defendant Saunders' work shift(s) and/or work hour(s), so that Ms. Delpeche would not have to work near him.

54.     Defendant Trevino told Ms. Delpeche that other staff members had also complained about Defendant Saunders.

55.     Ms. Delpeche asked Defendant Trevino why Defendant Saunders was still employed by the Defendant Company in light of the continuing sexual harassment.

56.     Ms. Delpeche asked Defendant Trevino why Defendant Saunders was still employed by the Defendant Company in light of the complaints against him from other staff members.

57.     Defendant Trevino told Ms. Delpeche that she would handle the problem.

58.     Defendant Trevino assured Ms. Delpeche that she would look into the issue.

59.     Defendant Saunders stated that he did make sexual advance(s) towards Ms. Delpeche.

60.     Defendant Saunders stated that he did make comment(s) to Ms. Delpeche that were inappropriate to make in the workplace.

61.     Defendant Saunders stated that he did "flirt" with Ms. Delpeche.

62.     Defendant Trevino verbally warned Defendant Saunders that "flirting" was not appropriate in the workplace (hereinafter, "Defendant Saunders' Verbal Warning").

63.     Defendant Saunders did not "flirt" with Defendant Company's male staff members.

64.     Defendants did not make a written record Defendant Saunders' Verbal Warning.

65.     Defendants did not include a written record of Defendant Saunders' Verbal Warning in Defendant Saunders' employee/personnel file.

66.     Defendants did not give Defendant Saunders a disciplinary write-up in connection with Ms. Delpeche's complaints.

67.     Defendants did not give Defendant Saunders any disciplinary action of any kind in connection with Ms. Delpeche's complaints.

68.     Defendant Trevino did not notify Defendant Company's human resources ("HR") department at the time when Ms. Delpeche first complained of sexual harassment.

69.     At the time when Ms. Delpeche first made her legally protected complaints, Defendant Trevino did not notify Defendant Company's HR department about Ms. Delpeche complaining that she not feel safe in the workplace.

70.     At the time when Ms. Delpeche first made her legally protected complaints, Defendant Trevino did not notify Defendant Company's HR department about Ms. Delpeche's requests that Defendant Saunders' work schedule be changed, so that Ms. Delpeche did not have to work near him.

71.     Ms. Delpeche had prescheduled days off from work on or around November 27, 2019 through to on or around November 29, 2019.

72.     Ms. Delpeche returned to work on or around November 30th.

73.     When Ms. Delpeche returned to work on or around November 30, 2019, Defendant Saunders was still working for the Defendant Company.

74.     By the time Ms. Delpeche returned to work on or around November 30, 2019, Defendants had not disciplined Defendant Saunders in any way in connection with Ms. Delpeche's complaints.

75.     By the time Ms. Delpeche returned to work on or around November 30, 2019, Defendants had not interviewed anyone in connection with Ms. Delpeche's complaints.

76.     By the time Ms. Delpeche returned to work on or around November 30, 2019, Defendants had not conducted any investigation(s) in connection with Mr. Delpeche's complaints.

77.     When Ms. Delpeche returned to work on or around November 30, 2019, Defendant Saunders appeared in the kitchen when Ms. Delpeche entered the room.

78.     Defendant O'Farrell was an Executive Sous Chef at Defendant Company during Ms. Delpeche's employment.

79.     Defendant O'Farrell was also one of Ms. Delpeche's supervisors.

80.     Defendant O'Farrell had the authority to give Ms. Delpeche work assignments.

81.     Defendant O'Farrell gave Ms. Delpeche work assignments.

82.     Defendant O'Farrell had the authority to discipline Ms. Delpeche.

83.     Defendant O'Farrell had the authority to be involved in scheduling Ms. Delpeche's work shifts.

84.     Defendant O'Farrell had some involvement in scheduling at least some of Ms. Delpeche's work shifts.

85.     Ms. Delpeche complained to Defendant O'Farrell about Defendant Saunders still being in the workplace after Ms. Delpeche complained about his repeated sexual harassment.

86.     Ms. Delpeche told to Defendant O'Farrell that she did not feel safe in the workplace.

87.      Ms. Delpeche told to Defendant O'Farrell that she could not work around Defendant Saunders.

88.     Ms. Delpeche told to Defendant O'Farrell that she needed to go home.

89.     Defendant O'Farrell told Ms. Delpeche that it would be considered quitting if she left the job.

90.     Ms. Delpeche told Defendant O'Ferrell that she was not quitting the job.

91.     Ms. Delpeche told Defendant O'Ferrell that she had no intention of quitting the job.

92.     Ms. Delpeche told to Defendant O'Farrell again that she did not feel safe working around Defendant Saunders.

93.     Ms. Delpeche told to Defendant O'Farrell again that she could not work around Defendant Saunders, particularly in light of her complaints.

94.     Ms. Delpeche told Defendant O'Farrell that she was calling Defendant Trevino to notify her of what was going on with respect to Defendant Saunders.

95.     Ms. Delpeche told Defendant O'Farrell that she was calling Defendant Trevino to notify her that she was not trying to quit her job.

96.     Defendant O'Farrell told Ms. Delpeche that she was being insubordinate because she was on the telephone.

97.     Defendant O'Farrell was aware that Ms. Delpeche was trying to call Defendant Trevino.

98.     Ms. Delpeche told Defendant O'Farrell again that she was trying to call Defendant Trevino to notify her of what was going on with respect to Defendant Saunders.

99.     Ms. Delpeche told Defendant O'Farrell again that she could not be around Defendant Saunders with her pending sexual harassment complaints.

100.    Ms. Delpeche told Defendant O'Farrell again that she did not feel safe working around Defendant Saunders.

101.    Defendant O'Farrell turned his back on Ms. Delpeche.

102.    Defendant O'Farrell would not speak with Ms. Delpeche.

103.    Defendant O'Farrell walked away from Ms. Delpeche.

104.    On her way home, Ms. Delpeche texted Defendant Trevino about what happened.

105.    Defendant Trevino told Ms. Delpeche to write a statement about what happened.

106.    Defendant Trevino told Ms. Delpeche that Defendants would also send a video to HR and would go from there.

107.    Ms. Delpeche emailed Ms. Trevino written statements on or around November 30, 2019.

108.    On or around December 1, 2019, Defendant Trevino forwarded Ms. Delpeche's written statements to Defendant Cha.

109.    On or around December 1, 2019, Defendant Cha was Defendant Company's Director of Training and Human Resources.

110.    On or around December 1, 2019, Defendant Trevino also forwarded Defendant Cha Defendant Trevino's response to Ms. Delpeche's written statements.

111. Defendant Trevino's response was dated December 1, 2019.

112. Defendant Trevino did not notify Defendant Company's HR department of Ms. Delpeche's complaints before Defendant Trevino forwarded Ms. Delpeche's written statements and Defendant Trevino's response to Defendant Cha on December 1st.

113. Defendant Trevino did not notify Defendant Company's HR department of Ms. Delpeche's complaints before December 1, 2019.

114. Defendant(s) did not notify Defendant Company's HR department of Ms. Delpeche's complaints before December 1, 2019.

115. Upon learning of Ms. Delpeche's complaints, Defendant Cha placed Ms. Delpeche on paid leave pending an investigation.

116. That was the first disciplinary action of any kind that Ms. Delpeche had received during her employment with Defendant Company.

117. Defendants had not given Ms. Delpeche any disciplinary action of any kind prior to placing her on paid leave on or around December 1, 2019.

118. Defendant Cha did not place Defendant Saunders on paid leave pending investigation of Ms. Delpeche's complaints.

119. Defendants did not place Defendant Saunders on paid leave pending investigation of Ms. Delpeche's complaints.

120. Defendant Cha also Ms. Delpeche on the telephone.

121. Ms. Delpeche further detailed the discrimination, harassment and retaliation that she suffered to Defendant Cha.

122. Thereafter, Defendant Cha told Ms. Delpeche that Defendant Company was suspending her for 7 days.

123.    Defendants subsequently extended Ms. Delpeche's suspension, pending investigation of her sexual harassment complaint.

124.    Defendants did not suspend Defendant Saunders, pending investigation of Ms. Delpeche's complaints.

125.    Ms. Delpeche attempted to arrange meeting(s) with Defendant Cha to further discuss her complaints.

126.    Ms. Delpeche attempted to arrange meeting(s) with Defendant Trevino to further discuss her complaints.

127.    Ms. Delpeche attempted to arrange meeting(s) with Defendant O'Farrell to further discuss her complaints.

128.    Defendants did not have further meeting(s) with Ms. Delpeche.

129.    Ms. Delpeche also repeatedly asked Defendant Cha to provide the video recordings, so that Ms. Delpeche could review them.

130.    Defendants did not provide the recording(s).

131.    Ms. Delpeche continued to ask to return to work as soon as possible.

132.    Defendants did not permit Ms. Delpeche to return to work.

133.    On or around December 16, 2019, Ms. Delpeche was hospitalized for pneumonia.

134.    Ms. Delpeche's pneumonia resulted, in part, from the extreme stress that Ms. Delpeche suffered at work due to Defendants' unlawful activities.

135.    On or around December 17th, Defendant Cha called Ms. Delpeche while she was in the hospital.

136.    Defendant Cha told Ms. Delpeche that her employment was terminated.

137.    Ms. Delpeche was discharged from the hospital on or around December 19, 2019.

## AS FOR THE FIRST CAUSE OF ACTION
## FOR SEX/GENDER DISCRIMINATION AND HARASSMENT
## UNDER TITLE VII
## (against Defendant Company only)

138.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

139.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants.

140.    During all times material, Defendant Company was and is an employer within the meaning of Title VII.

141.    At all times material, Plaintiff was an employee and an individual within the meaning of Title VII.

142.    At all relevant times, Plaintiff was and is a woman and a member of protected classes within the meaning of Title VII.

143.    At all relevant times, Defendants were aware of Plaintiff's sex and gender.

144.    Defendants engaged in unlawful employment practices prohibited by Title VII with behaviors including, but not limited to, sexually harassing Plaintiff numerous times during her employment, escalating the harassment after Plaintiff's legally protected complaints, and suspending and terminating Plaintiff's employment within weeks of her legally protected complaints.

145.    Upon information and belief, at all relevant times, Defendants were aware of and/or condoned and/or participated in the harassment and abuse against Plaintiff.

146.    Defendants' misconduct was so severe or pervasive that a reasonable person in Plaintiff's position would find that Plaintiff's work environment was intimidating, hostile or abusive.

147.    Plaintiff reasonably believed that Plaintiff's work environment that was intimidating, hostile or abusive as a result of Defendants' conduct.

148.    Upon information and belief, each and every Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

149.    Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

150.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

151.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

152.     As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

153.     Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

154.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, punitive damages, reasonable attorney's fees and compensatory damages from Defendant Company under Title VII.

### AS FOR THE SECOND CAUSE OF ACTION
### FOR SEX/GENDER RETALIATION UNDER TITLE VII
### (against Defendant Company only)

155.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

156.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendant.

157.     Defendants discriminated against and harassed Plaintiff in violation of Title VII.

158.     Plaintiff complained about Defendants' discrimination and harassment.

159.     In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff with misconduct, including, but not limited to, sexually harassing Plaintiff numerous times during her employment, escalating the harassment after Plaintiff's legally protected complaints, and suspending and terminating Plaintiff's employment within weeks of her legally protected complaints.

160.    Upon information and belief, each and every Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

161.    Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

162.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

163.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

164.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

165.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

166.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, punitive damages, reasonable attorney's fees and compensatory damages from Defendant Company under Title VII.

## AS FOR THE THIRD CAUSE OF ACTION
## FOR SEX/GENDER DISCRIMINATION AND HARASSMENT
## UNDER THE NYSHRL

167.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

168.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., as amended, and reference is made to the NYSHRL in its entirety.

169.    During all times material, Defendant Company was and is an employer within the meaning of the NYSHRL.

170.    At all relevant times, Defendant O'Farrell had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYSHRL.

171.    At all relevant times, Defendant Trevino had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYSHRL.

172.    At all relevant times, Defendant Cha had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the

power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYSHRL.

173.    At all relevant times, Defendant Saunders had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the NYSHRL.

174.    At all times material, Plaintiff was an employee and an individual within the meaning of the NYSHRL.

175.    At all times material, Plaintiff was and is a person and employee within the meaning of the NYSHRL.

176.    At all times material, Plaintiff was and is a woman and a member of protected classes within the meaning of the NYSHRL.

177.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL with misconduct including, but not limited to, sexually harassing Plaintiff numerous times during her employment, escalating the harassment after Plaintiff's legally protected complaints, and suspending and terminating Plaintiff's employment within weeks of her legally protected complaints.

178.    Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

179.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, color and/or ethnicity, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing,

participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

180.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

181.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

182.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

183.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, compensatory damages, attorney's fees, and punitive damages from Defendants under the NYSHRL.

## AS FOR THE FOURTH CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER THE NYSHRL

184.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

185.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., as amended, and reference is made to the NYSHRL in its entirety.

186.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

187.    Plaintiff complained about Defendants' discrimination and harassment.

188.    In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, sexually harassing Plaintiff numerous times during her employment, escalating the harassment after Plaintiff's legally protected complaints, and suspending and terminating Plaintiff's employment within weeks of her legally protected complaints.

189.    Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYSHRL.

190.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

191.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

192.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

193.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, compensatory damages, attorney's fees, and punitive damages from Defendants under the NYSHRL.

## AS FOR THE FIFTH CAUSE OF ACTION
## FOR SEX/GENDER DISCRIMINATION UNDER THE NYCHRL

194.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

195. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

196. During all times material, Defendant Company was and is an employer within the meaning of the NYCHRL.

197. At all relevant times herein, Plaintiff was and is a person within the meaning of the NYCHRL.

198. At all relevant times, Plaintiff was and is an employee within the meaning of the NYCHRL.

199. Defendants subjected Plaintiff to unlawful discrimination and harassment in violation of the NYCHRL with misconduct, including, but not limited to, sexually harassing Plaintiff numerous times during her employment, escalating the harassment after Plaintiff's legally protected complaints, and suspending and terminating Plaintiff's employment within weeks of her legally protected complaints.

200. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

201. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

202. Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

203.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

204.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

205.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

### AS FOR THE SIXTH CAUSE OF ACTION
### FOR SEX/GENDER RETALIATION UNDER THE NYCHRL

206.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

207.    This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

208.    Plaintiff complained about Defendants' discrimination and harassment, including, but not limited to, verbal and written complaints.

209.    In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, sexually harassing Plaintiff numerous times during her employment, escalating the harassment after Plaintiff's legally protected complaints, and

suspending and terminating Plaintiff's employment within weeks of her legally protected complaints.

210.   Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYCHRL.

211.   Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

212.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

213.   Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

214.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

215.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

216.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.     Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York State Human Rights Law; and the New York City Human Rights Law; and that the Defendants discriminated against Plaintiff on the basis of sex and gender; and that Defendants retaliated against Plaintiff's legally protected complaints.

B.     Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed;

C.     Awarding damages to Plaintiff for all lost wages and benefits, past and future, resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D.     Awarding Plaintiffs compensatory damages for mental and emotional distress, and injury to reputation;

E.     Awarding Plaintiff punitive damages under the Title VII, the NYSHRL, and the NYCHRL;

F.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action under Title VII, the NYSHRL, and the NYCHRL;

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable,

just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, NY
        February 1, 2021

Respectfully submitted,

LAW OFFICES OF LAURIE E.
MORRISON

By:  _____
        Laurie E. Morrison
        100 Church Street, Suite #801
        New York, New York 10007
        (212) 721-4051 (office)
        (646) 651-4821 (fax)
        morrison@lemorrisonlaw.com
        *Attorney for Plaintiff*

**TO:**

TASTES ON THE FLY and PARIS CAFÉ
TWA Hotel
One Idlewild Drive,
JFK International Airport, Terminal 5
NY, NY 11430

TASTES ON THE FLY NEW YORK, LLC
d/b/a PARIS CAFÉ d/b/a TASTES ON THE FLY
C/O Derek Watson
235 East 3rd Avenue
Suite 207
San Mateo, California, 94401
**Registered Agent**
C T Corporation System
28 Liberty St.
New York, New York, 10005
**VIA SECRETARY OF STATE**

RORY O'FARRELL
c/o TASTES ON THE FLY and PARIS CAFÉ (Defendant's Place of Employment)
TWA Hotel
One Idlewild Drive,
JFK International Airport, Terminal 5

25

NY, NY 11430

<u>AMY TREVINO</u>
c/o TASTES ON THE FLY and PARIS CAFÉ (Defendant's Place of Employment)
TWA Hotel
One Idlewild Drive,
JFK International Airport, Terminal 5
NY, NY 11430

<u>GRACE CHA</u>
c/o TASTES ON THE FLY and PARIS CAFÉ (Defendant's Place of Employment)
TWA Hotel
One Idlewild Drive,
JFK International Airport, Terminal 5
NY, NY 11430

<u>ERIK "ROCKY" SAUNDERS</u>
c/o TASTES ON THE FLY and PARIS CAFÉ (Defendant's Place of Employment)
TWA Hotel
One Idlewild Drive,
JFK International Airport, Terminal 5
NY, NY 11430